## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD ANGINO and ALICE** | : | |
| **ANGINO,** | : | **CIVIL NO. 1:15-CV-1145** |
| | : | |
| **Plaintiffs,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SANTANDER BANK, N.A.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

This lawsuit, which comes before us for consideration of a motion to dismiss, is one of several cases[1] brought by the plaintiffs against various financial institutions arising out of a common core of operative facts. These cases all share several essential elements. In each instance the case presents a sad coda to the successful professional career of the plaintiff, Richard Angino, a local attorney, and his wife, Alice Angino. It also presents a familiar, yet tragic, tale of plaintiffs whose economic ambitions exceeded their financial resources. Fueled by these ambitions, the plaintiffs borrowed millions of dollars from various lending institutions, including Santander Bank. When their dreams and ambitions confronted harsh economic realties, the plaintiffs defaulted on some of their loan obligations, including a residential mortgage owed to Santander

---

[1]See Angino v. Wells-Fargo, Civ No. 1:15-CV-418; Angino v. Santander Bank, Civ. No. 1:15-CV- 438.

Bank on a luxury vacation home, and the bank commenced efforts under its various agreements with the plaintiffs to recover the funds owed to it.

In the instant case, however, this tragic tale has a twist. The borrowers, who have undeniably defaulted on some of their loan obligations, have now sued their lender, Santander Bank, for exercising its contractual rights and seeking to call these loans. While we feel great sympathy for the circumstances confronting the Anginos, in the instant case, many of their novel theories of recovery against the bank draw no support in the law on the facts alleged by the plaintiffs in their complaint. Therefore, for the reasons set forth below, it is recommended that this complaint be dismissed. We note, however, that at least some of these claims may be subject to amendment by the plaintiffs, who have articulated matters in their response to the motion to dismiss that are not set forth in the complaint itself. Therefore, it is recommended that a number of these claims be dismissed with leave to amend the complaint to endeavor to state a claim upon which relief may be granted.

## II.    <u>Statement of Facts and of the Case</u>

The plaintiffs in this action are Richard Angino, a local attorney, and his spouse, Alice Angino. (Doc. 1, ¶1.) The plaintiffs are in their 70s and as Mr. Angino approaches the conclusion of his professional career he and his wife have experienced a series of financial reversals. As described by the Anginos in the well-pleaded facts set forth in their complaint, these financial setbacks are in large measure a product of

some $13,000,000 in loans and mortgage indebtedness which they agreed to undertake in connection with various residential and commercial projects over a number of years up through 2002. (Id., ¶¶6-15.)

Encumbered with these substantial debts, beginning in 2004 and continuing through November 2007, the Anginos turned to Santander Bank, and its corporate predecessors, Waypoint and Sovereign Bank, for loans and financing. (Id.) Ultimately, the ability of the Anginos to service this mountain of debt was undermined by the recession which affected the American economy in 2007 through 2009. (Id., ¶¶20-21.) As a result of these circumstances, by May 2010, the Anginos owed Santander Bank some $6,400,000. (Id., ¶22.) In May of 2010, "based solely on maturity dates" Santander Bank called a number of the Anginos' loans, which allegedly totaled some $6,400,000, and declined to renew an $800,000 letter of credit for the plaintiffs. (Id., ¶27.) The Anginos were unable to meet these loan repayment obligations, and in order to stave off foreclosure proceedings, entered into three loan modification agreements with Santander Bank beginning in July 2011. (Id., ¶29.) These loan modifications, however, only provided temporary financial respite for the Anginos, and as part of the loan modifications the plaintiffs agreed to additional repayment terms, and higher interest rates on their loans, as well as further encumbrance of their assets. (Id.)

Included among these many debts owed by the Anginos was a $250,000 consumer line of credit which the Anginos had obtained from Santander Bank in

March of 2008. (<u>Id</u>., ¶16.) While the plaintiffs assert that this consumer line of credit

had no maturity date, (<u>id</u>., ¶16), this assertion is contradicted by the agreement itself

which is attached as Exhibit A to the complaint. (<u>Id</u>., Exhibit A.) That written

agreement unambiguously stated that: "After the Draw Period ends you will no longer

be able to obtain advances on your Account and a final payment will be due on the

following date of maturity: 06/15/2008." (<u>Id</u>.)

This consumer line of credit also provided that the bank's:

[O]bligation to make advances ends when you or we terminate your Consumer Line of Credit or when your Draw Period ends.

**We may terminate your Consumer Line of Credit if we declare your Account to be in default,** which we can do when:

You do not make any required payment under this Agreement; or
You fail to keep any promise you have made in this Agreement or any other agreement you have with us; or

There is a material adverse change in your financial circumstances (including the filing of a bankruptcy or insolvency petition by or against you); or

Anyone garnishes or attaches any deposit or other property belonging to you which is in our possession; or

You commit fraud or make any material misrepresentation to us at any time; or
You exceed your Credit Limit and do not immediately repay the amount by which your Account exceeds your Credit Limit; or

You die or you are declared legally incompetent.

(<u>Id</u>., Exhibit A.)

In the event that any of these circumstances specified in the agreement took place, under the agreement, the bank was also entitled to: (1) refuse to make new loans to the Anginos; (2) could require immediate repayment of the line of credit; (3) could refer the debt to a collection agency; (4) could sue to collect the funds owed; and (5) could set off amounts owed against funds of the borrowers held by the bank. (Id.)

This line of credit, and the parties' dealings relating to this $250,000 line of credit lie at the heart of the instant lawsuit. According to the Anginos, in August of 2010, the bank called for full payment of the line of credit, which had a maturity date of June 15, 2008, by September 2010. (Id., ¶30.) At the time that the bank took this action, it seems undisputed that the loan had reached the maturity date set forth in the agreement itself, and that a final payment was due under the terms of the written agreement. It also is essentially undisputed that the Anginos had not been able to comply with conditions of other loans they had with Santander Bank since they had been unable to pay other debts owed to the bank in May of 2010, when those loans reached their maturity dates. Further, it is evident from the facts set forth in their complaint that by this time the Anginos had begun to experience a material adverse change in their financial circumstances, factors which all entitled the bank to call this loan under its written agreement with the plaintiffs.

According to the Anginos, they resisted these efforts by the bank to call the loan, arguing their view that the line of credit had no maturity date and merely required

interest payments. (Id., ¶30.) Several years of discussions then ensued, discussions in which the Anginos attempted, unsuccessfully, to secure additional financial concessions from the bank. (Id., ¶¶31-33.) During the ensuing 2 ½ years the Anginos made interest payments on the line of credit but were unable to pay the principal amount owed. Ultimately, by the summer of 2014, the bank began assessing late fees on the line of credit and demanding payment of this loan in full. (Id., ¶¶34-40.) According to the plaintiffs at this time: "Santander [also] reported Plaintiffs as deadbeats to the credit rating bureaus and destroyed Plaintiffs' credit, e.g., latest report from the credit bureau is attached as **Exhibit T."** (Id., ¶41.)[2]

Based upon these averments, the Anginos have filed a five-count civil complaint, which combines and conflates various claims and causes of action. In Count I the Anginos allege that Santander's actions constituted a breach of contract, a breach of a duty of good faith, and was barred by the impossibility doctrine of contract law, as well as the reasonable expectations of the parties, and concepts of estoppel and waiver. (Id., ¶¶42-49.) Count II of the complaint, in turn, alleged that the bank engaged in unfair and deceptive practices under Pennsylvania' Unfair Trade Practices and Consumer Protection law, 73 Pa.C.S. §201-1, although the nature of this deceptive

---

[2]We note that Exhibit T, the Anginos' credit report, seems to simply report what the Anginos have acknowledged; namely, that they have not made principal payments on this line of credit despite demands from the bank that they repay this credit.

practice is not otherwise described in this count of the complaint. (Id., ¶¶73-83.) Count III of the complaint alleged violations of the federal Fair Credit Reporting Act, by the bank. These alleged Fair Credit Reporting Act violations appear to have pertained to the bank's reports that the Anginos had not made principal payments on this loan. (Id., ¶¶55-59.) In addition, Count IV of the complaint accuses the bank of intentional infliction of emotional distress. (Id.,¶¶60-66.) Finally, in Count V of the complaint the Anginos alleged that they were libeled by the bank when the bank reported their loan payment status to credit rating agencies. (Id., ¶¶67-69.)

Presented with this novel, and multi-faceted complaint, Santander Bank has now moved to dismiss the complaint citing numerous legal deficiencies in this pleading. (Docs. 8 and 9.) The Anginos, in turn, have responded to this motion to dismiss by, in part, making new factual allegations beyond those set forth in the complaint itself. While we note that the plaintiffs' claims seem to have transmogrified factually in the course of this litigation, when we consider the allegations actually made by the plaintiffs in their complaint, we find that those allegations do not state a claim upon which relief may be granted. Therefore, we recommend dismissal of this complaint as it is currently pleaded by the plaintiffs. We recognize, however, that the plaintiffs have suggested that they may be able in some instances to allege facts which may constitute a cause of action. Therefore, with respect to some counts, as set forth below, we recommend dismissal of the complaint without prejudice to the filing of an amended

complaint which endeavors to address the deficiencies which we note in this Report and Recommendation.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard.

Santander Bank has filed a motion to dismiss this amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny,</u> 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.   Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).   However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).   Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."   Id.   As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."   Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009),

the Supreme Court held that, when considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Id. at 678.   Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations  sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B.     As Currently Pleaded This Complaint Fails to State a Claim Upon Which Relief May Be Granted**

**1.     The Plaintiffs Have Not Alleged a Viable Breach of Contract Claim**

At the outset, in Count I of their complaint the plaintiffs allege that Santander Bank has breached its line of credit agreement with the Anginos. As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). The legal principles governing the interpretation of contracts under Pennsylvania law is familiar and well-settled. To prevail on a claim for breach of contract under Pennsylvania law, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) defendant's breach of duty imposed by the terms; and (3) actual loss or injury as a direct result of the breach. See Diodato v. Wells Fargo Ins. Servs., USA, 44 F. Supp. 3d 541, 556 (M.D. Pa. 2014). Furthermore, the legal benchmarks applied to contract interpretation are also clearly settled. Initially, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has aptly summarized

Pennsylvania law regarding the interpretation of contractual language and terms:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal

citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (Pa. 2001)).

Furthermore, courts must, whenever possible, read contract provisions so as to avoid

ambiguity.  Id. at 247.  Where a contract is not ambiguous, but is instead subject to

only one reasonable interpretation, it is appropriate for a district court to resolve the

issue of interpretation as a matter of law.  See Norfolk S. Ry. v. Reading Blue

Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004).

Applying these legal benchmarks, we find that the Anginos' breach of contract claim, as currently pleaded, fails as a matter of law on several scores. Indeed, there is an intellectually elusive quality to this breach of contract claim. Several factors combine to frustrate a reasoned understanding of this particular claim.

First, the plaintiffs' representations regarding this contract in their complaint are internally inconsistent. In the text of the complaint plaintiffs assert that this consumer line of credit had no maturity date, (id., ¶16), but this assertion is contradicted by the agreement itself which is attached to the complaint and unambiguously stated that: "After the Draw Period ends you will no longer be able to obtain advances on your Account and a final payment will be due on the following date of maturity: 06/15/2008." (Id.) We find this language to be clear and unambiguous. Therefore, "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). Since the plaintiffs' breach of contract claim is premised upon a contract interpretation which is contradicted by the actual written agreement itself, we conclude that this claim fails as a legal matter.

Further, the interpretation of this agreement urged by the plaintiffs would, in effect, allow them to keep $250,000 in perpetuity by simply paying interest payments. This interpretation is inconsistent with the language of the written agreement itself, and

would be commercially unreasonable since it would declare this line of credit to be of a potentially infinite duration, subject only to the plaintiffs' election to pay interest. Since the interpretation urged by the Anginos is both commercially unreasonable, and conflicts with the actual language of the written agreement, we may not allow this strained construction of the agreement to override the plain text of the contract.

In any event, the facts recited by the Anginos in their complaint reveal that the plaintiffs were unable over time to fulfill all of their commitments to Santander bank and suffered materially adverse changes in their financial circumstances during the life of the agreement. These essentially undisputed facts, in turn, constitute events which under the terms of the line of credit agreement authorized the bank to demand full repayment of the outstanding line of credit.   Therefore, the facts recited in the complaint do not allege a violation of the agreement by Santander Bank. Rather, they simply describe an effort by the bank to enforce its rights under this written agreement.

The Anginos' prospects on this particular contract claim do not improve if it is cast as a claim for a breach of a duty of good faith. As a general rule allegations of a breach of the covenant of good faith sound in contract, rather than tort. See Creeger Brick & Bldg. Supply, Inc . v. Mid–State Bank & Trust Co., 560 A.2d 151, 153 (Pa.Super.Ct.1989) ("Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts."). As a result, courts have found that the breach of the covenant of good faith is subsumed in a claim for breach of contract. See

<u>McHale v. NuEnergy Group</u>, No. Civ. A. 01–4111, 2002 WL 321797, *8 (E.D.Pa. Feb. 27, 2002) (concluding that Pennsylvania law would not recognize a claim for breach of the covenant of good faith and fair dealing as a separate cause of action apart from the breach of contract claim, since the actions forming the basis of the breach of contract claim were essentially the same as those brought in support of the bad faith claim); <u>see also JHE, Inc. v. Se. Pa. Transp. Auth.</u>, 2002 WL 1018941, *7 (Pa.Com.Pl. May 17, 2002) ("[A] breach of the covenant of good faith is nothing more than a breach of contract claim and ... separate causes of action cannot be maintained for each, even in the alternative."); <u>Commonwealth v. BASF Corp.</u>, No. 3127, 2001 WL 1807788, *12 (Pa.Com.Pl. Mar. 15, 2001) ("Pennsylvania law does not allow for a separate cause of action for breach of either an express or implied duty of good faith, absent a breach of the underlying contract."). Rather, under Pennsylvania law, such a duty of fair dealing is entirely dependent upon the existence of a contractual relationship. In short, Pennsylvania law grafts onto all contracts a responsibility by the contracting parties to deal fairly with one another. However, Pennsylvania law does not recognize an independent, and free-standing, duty of fair dealing outside a contractual context.  As we have previously explained:

> Whether express or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself. <u>See Ash v. Cont'l Ins. Co.</u>, 593 Pa. 523, 932 A.2d 877, 884 (2007); <u>Birth Center</u>, 787 A.2d at 385;  <u>Murphy</u>, 777 A.2d at 434 & n. 11; <u>Gray</u>, 223 A.2d at 11 ("We believe that this recent case law, employing

contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); <u>Cowden v. Aetna Cas. & Sur. Co.</u>, 389 Pa. 459, 134 A.2d 223, 229 (1957).

Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties-as, for example, a fiduciary duty-a breach of the covenant sounds in contract, not tort. <u>See Ash</u>, 932 A.2d at 884. There is, however, no independent cause of action for a breach of the covenant of good faith and fair dealing-arising in contract-in Pennsylvania because such a breach is merely a breach of contract. <u>See Birth Center</u>, 787 A.2d at 385-86; <u>Gray</u>, 223 A.2d at 11. It has been said that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim. <u>See Meyer v. Cuna Mut. Group</u>, No. 03-CV-602, 2007 WL 2907276, at *14-15 (W.D.Pa. Sept. 28) (citing cases).

<u>Zaloga v. Provident Life and Acc. Ins. Co. of America</u>, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009).

Since there typically is no separate cause of action under Pennsylvania law for breach of the duties of good faith and fair dealing; <u>Chanel, Inc. v. Jupiter Group, Inc.</u>, Civ. No. 3:04-CV-1540, 2006 U.S. Dist. LEXIS 43363, at *6 (M.D. Pa. June 27, 2006); <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 549 (D.N.J. 2004); <u>Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc.</u>, 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); <u>LSI Title Agency, Inc. v. Eval. Servs., Inc.</u>, 951 A.2d 384, 391 (Pa. Super. Ct. 2008), a claim for breach of the duties of good faith and fair dealing is, at bottom, simply a claim for breach of the underlying contract. <u>Zaloga v. Provident Life and Acc. Ins. Co. of America</u>, 671 F.Supp.2d 623, 630-631 (M.D.Pa. 2009). Yet, in this

case the Anginos seem to be alleging a breach of the duty of good faith claim, without asserting a clearly articulated breach of the underlying contract between themselves and Santander Bank. This is a fatal flaw and defeats this claim as it is currently pleaded.

In any event, to the extent that some duty of good faith arises in a contractual setting, it is also  clear that the scope of that duty in a borrower-lender transaction is narrowly defined and does not entail some legal obligation on the part of the lender to unilaterally agree to undermine, modify or defeat its own legal rights and interests under a commercial agreement. Thus, "the Supreme Court of Pennsylvania has refused to impose a duty of good faith which would modify or defeat the legal rights of a creditor. Heights v. Citizens National Bank, 463 Pa. 48, 342 A.2d 738 (1975)." Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36, 560 A.2d 151, 154 (1989). Likewise:

> It seems reasonably clear from the decided cases that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons.

Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989). In short, to the extent that Pennsylvania law recognizes a contractual duty of good faith, "courts have ... refused to apply a duty of good faith to alter or defeat the rights of a creditor which have been granted by law *or contract.*" Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 342 (M.D. Pa. 2013)(emphasis in original).

Fairly construed, the plaintiffs' complaint invites us to do precisely what Pennsylvania law says we cannot do through the rubric of a duty of good faith and fair dealing; that is, require a creditor to alter, defeat, modify, or renounce some contractual rights which it possesses. The all-encompassing duty of good faith asserted by the Anginos in this complaint would also call upon us condemn Santander Bank for taking actions which the courts have expressly stated it is permitted to take such as "adhering to its agreement with the borrower . . . by enforcing its legal and contractual rights as a creditor;" refusing "to surrender rights which it has been given by statute or by the terms of its contract;" or "negotiat[ing] terms of a loan which are favorable to itself." Creeger Brick & Bldg. Supply Inc. v. Mid State Bank & Trust Co., 385 Pa. Super. 30, 36-37, 560 A.2d 151, 154 (1989). Since Pennsylvania case law specifically rejects the notion that a lender must surrender its legal rights in order to demonstrate its good faith to its borrower, the Anginos' good faith claim, which is unmoored to any contractual

breach by Santander and demands that Santander forego its contractual rights, fails as a matter of law and should be dismissed.

Similarly, the Anginos cannot bolster this breach of contract claim, as they attempt to do in their response to this motion to dismiss by cataloguing a series of doctrines, claims and affirmative defenses which are not pleaded in the complaint, such as "Reasonable Expectations, Ambiguity, Waiver and Estoppel, Mutual Mistake of Fact, Breach of Good Faith etc." (Doc. 11, p. 15.) These arguments fail for several reasons. First, the difficulty with these belated assertions is that they are not set forth in the complaint and run afoul of the well-settled principle that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6).").

In addition, a number of these matters belatedly raised by the plaintiffs are in the nature of defenses to contract claims. As the Pennsylvania courts have previously informed the Anginos, these types of affirmative defenses under Pennsylvania law and

do not constitute an independent legal claim. Angino & Rovner, PC v. Santander Bank, N.A., No. 489 MDA 2014, 2015 WL 6405714, at *7 (Pa. Super. Ct. Jan. 28, 2015). Indeed, the Pennsylvania courts have already specifically rejected the application of the reasonable expectations, waiver and estoppel, impracticability and impossibility doctrines to similar claims leveled by the Anginos against Santander Bank in state court litigation. Id. Thus, the Pennsylvania courts have already advised the plaintiffs that they may not transmogrify these breach of contract defenses into quasi-contractual affirmative claims.

More fundamentally, even construed as affirmative defenses to contract liability, these defenses are typically limited to instances of physical impossibility, and not mere fiscal impracticability. Thus: "[I]f the allegedly unforeseeable event was in reality a natural and fairly predictable risk arising in the normal course of business, then a court may not dissolve a[n] agreement . . . . An individual's financial position, for example, cannot generally be an implied 'basic assumption' of a contract, nor will it excuse a party's performance. See Restatement (Second) of Contracts § 261 (1981) Comment: b. Basic assumption. Illustration 2 (showing that contracting party's financial situation as result of bank failure does not excuse performance on contract)." Step Plan Servs., Inc. v. Koresko, 12 A.3d 401, 412-13 (Pa. Super. Ct. 2010). In this case, the Anginos attempt to assert that the change in their fiscal position gives them some form of affirmative breach of contract claim against their lender. This is something they may

not do under Pennsylvania law. Therefore, this claim would fail as pleaded by the Anginos, and should be dismissed. If the plaintiffs wish to try to further articulate these claims of estoppel and waiver, they should do so through the filing of a timely amended complaint, but they may not endeavor to transform their claims through their response to this motion to dismiss.

Finally we note that the plaintiffs' complaint alludes to the Home Affordable Modification Program (HAMP), a federal program designed to assist some banks and borrowers, and the Dodd-Frank financial reform laws and may be read to allege some type of private right of action on behalf of the plaintiffs against the bank under these federal statutes. To the extent that the Anginos incorporate these matters into their breach of contract claims, these claims merit only brief consideration by this court. First, it is undisputed that "HAMP does not provide a private right of action. See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 559 n. 4 (7th Cir.2012) (noting that 'HAMP does not create a private federal right of action for borrowers against servicers')." Sinclair v. Citi Mortgage, Inc., 519 F. App'x 737, 739 (3d Cir.) cert. denied sub nom. Sinclair v. Citi Mortgage, Inc, 134 S. Ct. 245, 187 L. Ed. 2d 182 (2013) reh'g denied sub nom. Sinclair v. Citi Mortgage, Inc., 134 S. Ct. 1054, 188 L. Ed. 2d 140 (2014). "Quite the contrary, 'federal courts across the country have held that HAMP does not create a private right of action for borrowers.' " Taylor v. Sovereign/Santander Bank, No. 1:15-CV-123, 2015 WL 757543, at *5 (M.D. Pa. Feb.

23, 2015)(collecting cases). Therefore, it is well-settled that the Anginos may not premise a private right of action upon the HAMP program.  Likewise with narrow exceptions that are not pertinent here, the Dodd-Frank Act does not provide for a private right of action by borrowers against lending institutions. See, e.g., Regnante v. Sec. & Exch. Officials, No. 14 CIV. 4880 KPF, 2015 WL 5692174, at *7 (S.D.N.Y. Sept. 28, 2015); Diena v. Certified Credit & Collection Bureau, Inc., No. 14 Civ. 769(AET), 2015 WL 570247, at *2 (D.N.J. Feb. 11, 2015) ("Plaintiff offers no statutory basis for the existence of a private right of action under the Dodd–Frank Act[.]")); Levine v. Entrust Grp., Inc., No. 12 Civ. 3959(WHA), 2013 WL 1320498, at *7 (N.D.Cal. Apr. 1, 2013) ("Under the Dodd–Frank Act, the Court's research can find no private right of action.")).Therefore these claims should also be dismissed.

### 2.   As Pleaded, the Anginos Have Not Alleged a Claim Against Santander Bank Under the Fair Credit Reporting Act

Moreover, as it is currently pleaded,  the Anginos have not alleged a claim against Santander Bank under the federal Fair Credit Reporting Act, 15 U.S.C. §1681 (FCRA), in Count III of this complaint. That count simply states, without any supporting factual detail, that the bank reported late payments by the plaintiffs to credit rating services, on various loan accounts, including "Plaintiffs' mortgage account." (Id., ¶57.) While the Anginos' complaint does not allege which provision of the FCRA they rely upon in making these allegations, in their response to this motion to dismiss

the plaintiffs effectively amend their complaint to state with greater specificity that they are suing Santander Bank under 15 U.S.C. § 1681s-2(b) for allegedly furnishing false information to the credit services.

There are several difficulties with this count of the complaint as it is currently pleaded. First, the claim is not clearly articulated in the complaint itself, and the plaintiffs may not amend their complaint through the filing of a responsive brief.

More fundamentally, as a furnisher of information to credit reporting agencies, Santander can only be liable to private parties under 15 U.S.C. § 1681s-2(b) if the following conditions are met: (1) notice was sent by the consumer of disputed information to a consumer reporting agency, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information. Jaramillo v. Experian Information Solutions, Inc., 155 F.Supp. 2d 356, 362-63 (E.D.Pa. May 21, 2001); Slimm v. Bank of America Corp., 2013 WL 1867035 at*9 (D.N.J. May 2, 2013). In its current form, the Anginos' complaint does not allege well-pleaded facts describing these elements of this offense. This is a cardinal failure of pleading, and given the nature of these allegations, the defendant is entitled to have the plaintiffs satisfy the elements of claim by specifying in their complaint: (1) what inaccurate information was reported by the bank; (2) identify the consumer notices which the plaintiffs sent to a consumer reporting agency; and (3) describe how the bank then failed to correct this erroneous information. While

the Anginos may be able to correct these flaws in their complaint, they should be required to do so before the case proceeds forward, and this count of the complaint should be dismissed without prejudice to the plaintiffs endeavoring to file an amended complaint which meets federal pleading requirements.

### 3.   In its Current Form, the Anginos' Complaint Fails to Properly Allege Unfair and Deception Practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1

Furthermore, in its current form, the Anginos' complaint does not sufficiently allege a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.Indeed, with respect to Count II of the Anginos' complaint, beyond labeling the bank's conduct as fraudulent, the plaintiffs' complaint is devoid of any well-pleaded factual allegations which would support these serious claims. Thus, the plaintiffs provide no description of the allegedly fraudulent representations which they contend were made here by the bank. Furthermore, the plaintiffs do not allege any facts which would support an inference that the bank's decision to enforce its contractual rights constituted some form of fraud upon the Anginos.

A review of the complaint suggests that, as drafted, the Anginos' claims against Santander appear to be premised upon §2011-2(4 )(xxi) of the UTPCPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." This statutory prohibition against

"deceptive conduct does not require proof of the elements of common law fraud, but

. . . knowledge of the falsity of one's statements or the misleading quality of one's

conduct is still required." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d

Cir. 2013). "Therefore, in order '[t]o establish liability under the catch-all provision of

the UTPCPL, "a plaintiff must present evidence showing: (1) a deceptive act that is

likely to deceive a consumer acting reasonably under similar circumstances; (2)

justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable

loss." Slapikas v. First Am. Title Ins. Co., CIV.A. 06–0084, —— F.R.D. ——, ——,

2014 WL 899355, at *6 (W.D.Pa. Mar.7, 2014) (citing Seldon v. Home Loan Servs.,

647 F.Supp.2d 451, 470 (E.D.Pa.2009); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223

(3d Cir.2008)).' Prukala v. Elle, 3:14–CV–92, 2014 WL 1311125, *3 (M.D.Pa.

Mar.28, 2014)." Stephens v. State Farm Fire & Cas. Co., No. 1:14-CV-160, 2014 WL

5312682, at *9 (M.D. Pa. Oct. 16, 2014).

    In this case, as it is currently pleaded, the plaintiffs' UTPCPL claim simply does

not identify any affirmative deceptive acts by Santander Bank upon which the plaintiffs

justifiably relied to their financial detriment. While we find that these spare allegations

are insufficient to meet the elements of a claim under the UTPCPL, we note that courts

have sustained such claims in cases where the plaintiff's complaint alleges well-

pleaded facts describing affirmatively misleading representations made to borrowers

by lenders which went beyond mere technical non-compliance with federal regulations.

See  Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787 (E.D. Pa. 2014). We also understand the plaintiffs to be arguing that they may be able to allege additional specific well-pleaded facts which meet the elements of a UTPCPL claim. Therefore, acting out of an abundance of caution, we recommend that this count of the complaint should also be dismissed without prejudice to the plaintiffs attempting to allege facts which satisfy the elements of a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1.

### 4.     The Plaintiffs Have Failed to Allege a Claim for Intentional Infliction of Emotional Distress Upon Which Relief May Be Granted

In Count IV of their complaint the plaintiffs allege that Santander Bank committed the tort of intentional infliction of emotional distress when it exercised its rights under the loan agreement with the Anginos, and demanded repayment of this line of credit. With respect to claims for intentional infliction of emotional distress, under Pennsylvania law, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress.  Only if conduct which is extreme or clearly outrageous is established will a claim be proven."  Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998).  Indeed, the Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the

plaintiff to punitive damages for another tort."  Restatement (Second) of Torts § 46,

comment d; Hoy, 720 A.2d at 754.  In keeping with these restrictive standards, the

Pennsylvania Supreme Court has provided examples of conduct found to state a claim

for intentional infliction of emotional distress, and such examples demonstrate the

extraordinary nature of the theory:

> Cases which have found a sufficient basis for a cause of action of
> intentional infliction of emotional distress have had presented only the
> most egregious conduct. See e.g., Papieves v. Lawrence, 437 Pa. 373, 263
> A.2d 118 (1970)(defendant, after striking and killing plaintiff's son with
> automobile, and after failing to notify authorities or seek medical
> assistance, buried body in a field where discovered two months later and
> returned to parents (recognizing but not adopting section 46)); Banyas v.
> Lower Bucks Hospital, 293 Pa.Super. 122, 437 A.2d 1236
> (1981)(defendants intentionally fabricated records to suggest that plaintiff
> had killed a third party which led to plaintiff being indicted for homicide);
> Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d.
> Cir.1979)(defendant's team physician released to press information that
> plaintiff was suffering from fatal disease, when physician knew such
> information was false).

Hoy,720 A.2d at 754.

Thus, in order to sustain a claim of intentional infliction of emotional distress,

Pennsylvania law requires that a plaintiff plead that:  "(1) the conduct was extreme and

outrageous; (2) the conduct was intentional; (3) the conduct caused emotional distress;

and (4) the distress was severe. Silver v. Mendel, 894 F.2d 598, 606 n. 16 (3d

Cir.1990). Ultimately, in order to prevail on a claim for intentional infliction of

emotional distress, a plaintiff must show that a defendant's conduct exceeded the

bounds of decency and is intolerable under prevailing societal norms. Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super.Ct.2005); see also Cox v. Keystone Carbon Co., 861 F.2d 390 (3d Cir.1988)." Kearney v. JPC Equestrian, Inc., No. 3:11-CV-01419, 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012) report and recommendation adopted, No. 3:11-CV-01419, 2012 WL 1020266 (M.D. Pa. Mar. 26, 2012).  Applying this exacting standard, courts generally agree that a lender's efforts to recover a debt by simply asserting its legal and contractual rights does not constitute intolerable or outrageous conduct giving rise to the tort of intentional infliction of emotional distress. See, e.g., DeHart v. HomEq Servicing Corp., 47 F. Supp. 3d 246, 257 (E.D. Pa. 2014); Messer v. First Fin. Fed. Credit Union of Maryland, No. CIV.A. 11-4144, 2012 WL 3104604, at *4 (E.D. Pa. July 30, 2012);  Wilson v. Am. Gen. Fin. Inc., 807 F. Supp. 2d 291 (W.D. Pa. 2011). Thus, for example, "[w]here a party has a legal right to proceed with a foreclosure, the sending of a notice of intention to foreclose as required by state procedure can give rise to no cause of action for intentional infliction of emotional distress." Brown v. Udren Law Offices PC, No. CIV.A. 11-2697, 2011 WL 4011411, at *4 (E.D. Pa. Sept. 9, 2011).  In our view, this is essentially what has happened in the instant case. Santander Bank has simply proceeded to assert what it regards as its contractual rights under this line of credit agreement. As a matter of law, the exercise of these contractual rights cannot rise to the level of intolerable or outrageous conduct which exceeds the bounds of decency. Therefore, this claim fails as a matter of law.

Indeed, we note that the Pennsylvania courts have expressly rejected similar claims made by the plaintiffs against Santander Bank in state court litigation, holding in terms that are equally applicable here that the: "Bank pursued its legal rights and warned plaintiffs of its intent to [act] due to the lack of payments. Hence, Bank's actions are legal, not irresponsible. If plaintiffs suffered emotional distress, it was the result of their unhappiness over Bank's pursuit of its legal remedies." Angino & Rovner, PC v. Santander Bank, N.A., No. 489 MDA 2014, 2015 WL 6405714, at *8 (Pa. Super. Ct. Jan. 28, 2015). In sum, this claim for intentional infliction of emotional distress also fails as a matter of law and should be dismissed with prejudice.

### 5.    The Anginos' Common Law Libel Claim Fails as a Matter of Law

Finally, in Count V of their complaint the Anginos allege in a summary fashion that Santander Bank libeled them when it "published in the credit rating agencies statements about Plaintiffs that were untrue, defamatory in character, and resulted in the destruction of Plaintiffs' credit rating." Doc. 1, ¶68.)  Thus, the gravamen of this claim is an alleged libel which allegedly occurred in the context of some credit rating bureau report made by the bank.

This claim warrants only brief consideration. First, to the extent that the Anginos are bringing a state common law libel claim arising exclusively out of credit rating reporting, the federal Fair Credit Reporting Act appears to preempt this field and provides that:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

Thus, in the absence of allegations of actual malice or a willful intent to injure–allegations which are not made here[3]–this preemption provision would bar libel or defamation claims against furnishers of financial information like the bank. Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 46 (2d Cir. 2011); Purcell

---

[3]Indeed, it is difficult to imagine how the plaintiffs could credibly allege that false information was furnished by the bank with malice or willful intent to injure them since such action would be directly contrary to the bank's financial self-interest in that it would only further serve to erode and undermine the ability of the Anginos to repay the millions of dollars they owed to this financial institution. Nonetheless if the court adopts this recommendation it may wish to allow the plaintiffs leave to amend this claim to state further facts which would address this preemption issue, if they are able to do so.

v. Bank of Am., 659 F.3d 622, 625 (7th Cir. 2011); Dietz v. Chase Home Fin., LLC,,

41 A.3d 882, 889 (Pa. Super. Ct. 2012).

Entirely aside from these preemption considerations relating to libel claims

arising out of allegedly false credit rating information furnished by the bank, a

preemption argument which has not been seriously disputed by the Anginos, we are

constrained to note that the Pennsylvania courts have considered, and rejected, other

similar commercial libel claims brought against Santander Bank by the Anginos,

stating simply that: "This complaint is a frippery."[4] Angino & Rovner, PC v. Santander

Bank, N.A., No. 489 MDA 2014, 2015 WL 6405714, at *8 (Pa. Super. Ct. Jan. 28,

2015).

In closing, although we feel great sympathy for the financial plight which

confronts the plaintiffs at this juncture in their lives, those considerations of sympathy

do not permit us to forego the requirements of the law, and in this setting the law

simply does not permit the plaintiffs to litigate their way to liquidity by suing the bank

which lent them money simply because that financial institution declined to modify its

loan agreement with the plaintiffs to its detriment and the plaintiffs' benefit. Nor can

the plaintiffs seek solvency through a lawsuit based upon the proposition that the bank

engaged in tortious misconduct when it enforced its contractual rights.

---

[4]A frippery is defined as "something showy, frivolous, or nonessential."
www.merriam-webster.com/dictionary/frippery

## IV.    __Recommendation__

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

Motion to Dismiss filed by Santander Bank (Doc. 8) be GRANTED and Counts I, II,

III, and V of the complaint be DISMISSED without prejudice. IT IS FURTHER

RECOMMENDED that Count IV be DISMISSED with prejudice.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of December, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge
